UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 05-80658-CIV-RYSKAMP/VITUNAC

PAUL ZUMWALT

    Plaintiff,

v.

CITY OF PALM BEACH GARDENS,
a municipal corporation, and
RONALD COUNCIL, individually,

    Defendants.

_____/

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND DECLINING TO EXERCISE JURISDICTION OVER REMANING STATE LAW CLAIM**

THIS CAUSE comes before the Court pursuant to the Defendants' Motions for Summary Judgment. Officer Ronald Council ("Council") moved for summary judgment on July 14, 2006 **[DE 82]**. Plaintiff Paul Zumwalt ("Zumwalt") responded on July 27, 2006 **[DE 85]**. Council replied on August 7, 2006 **[DE 89]**. The City of Palm Beach Gardens ("City") moved for summary judgment on July 14, 2006 **[DE 76]**. Zumwalt responded on July 27, 2006 **[DE 84]**. The City replied on August 8, 2006 **[DE 91]**. The Court heard oral argument on the motions on September 21, 2006. These motions are ripe for adjudication.

**I. BACKGROUND**

While on patrol on May 15, 2004 shortly after 11 p.m., Council was called to the scene of a traffic accident investigation. (Probable Cause Affidavit, 3.) Council was advised by the investigating officer, Officer Gary Carmack ("Carmack"), that Zumwalt appeared to be the cause

Page 2

of the collision between his vehicle and that owned by Robert Bolanos ("Mr. Bolanos") in that he ran a red light at the intersection of Ellison Wilson Road and PGA Blvd., in Palm Beach Gardens, Fla.

Bolanos and his wife, Ronette Bolanos ("Mrs. Bolanos"), were returning home with their two young children in the backseat of their car when the accident occurred. (Mr. Bolanos Depo., 6, 7, 13.) The Bolanoses observed Zumwalt after the accident and both concluded that he appeared "drunk" or otherwise impaired. (Mr. Bolanos Depo., 9-10.) Mrs. Bolanos noted that Zumwalt was unsteady on his feet, slurring his words, and staggering. (Mrs. Bolanos Depo., 22, 38.) She observed Zumwalt attempt to bend back into place the metal bumper of his vehicle. (Mrs. Bolanos Depo., 13.) Mr. Bolanos noted that Zumwalt slurred his words, was shaky, and nearly fell. (Mr. Bolanos. Depo. 33-34.) Mrs. Bolanos called 911 and reported to the operator that Zumwalt was drunk. (Mrs. Bolanos Depo., 14.) Both Bolanoses reported to the paramedics and first officers on the scene that Zumwalt was impaired. (Mr. Bolanos Depo., 11.) Mrs. Bolanos specifically told Carmack that Zumwalt appeared drunk and explained the foregoing events to him. (Mrs. Bolanos Depo., 26.)

Carmack testified that Zumwalt swayed while standing, smelled of alcohol and had slurred speech. (Carmack Depo., 18-19). Carmack issued Zumwalt a ticket for running a red light. (Council Depo., 80). When Council arrived on the scene, he requested Zumwalt to perform roadside sobriety tests, including the finger-to-toe, heel-to-toe walking, and reverse alphabet tests. Council recorded his observation that Zumwalt failed each of these tests. (Council Depo., 50-52, 59.) Council did not request that Zumwalt attempt the horizontal gaze nystagmus test. (Council Depo., 26.) Council did not feel that at the time he was sufficiently

trained to administer this test. (Council Depo., 27.) Council also spoke with Zumwalt, who stated, "I'm not drunk. I'm tired. I don't smoke crack." (Zumwalt Depo., 73.) Based upon the tests that were performed, his observations and those of the others present, Council placed Zumwalt under arrest and transported him to the Palm Beach County Sheriff's BAT Center for further testing. (Probable Cause Affidavit, 3.)

At the BAT Center, Zumwalt underwent a breathalyzer test that was negative for alcohol presence. When requested to provide a urine sample for analysis, Zumwalt would not provide it. (Council Depo., 60-64.) Zumwalt claims he was unable to urinate at the time he was requested to perform the test. (Zumwalt Depo., 43-44.) Upon being released the next morning, Zumwalt drove to the Veterans Administration Medical Center Emergency Room, where he reported to the emergency room personnel that he was disoriented the evening before and ran into another car. (Zumwalt Depo., 121-22; VA Records, 91, 93.) He provided a urine sample to the VA technicians, which, 12 hours after the accident, was positive for the presence of Tamazepan, a prescription sleep aid. (VA Records, 101.) The DUI charges were no-filed by the state attorney. (State Atty Records, A-7.) The original traffic citation for running the red light was also dropped. (Council Depo., 93.)

Zumwalt suffers from several mental illnesses, including gender identity disorder. He attributes his arrest not to his alleged wrongdoing, but to "his gender identification problem, his effeminate manner and just generally who he is." (Zumwalt's Response, 5.) Zumwalt claims that the arrest, breathalyzer test and request for a urine sample violated his right to freedom from unreasonable search and seizure.

Page 4

Zumwalt brings a four-count complaint against Council and the City pursuant to 42 U.S.C. § 1983. Count I alleges that Council based the arrest, breathalyzer test and request for a urine sample on manufactured probable cause in violation of his Fourth Amendment right to freedom from unlawful search and seizure. Count II is a malicious prosecution claim directed at Council. Count III is a false arrest claim directed against the City. Count V[1] is a failure to train claim directed against the City alleging that Zumwalt was denied due process because Council was not trained to perform the gaze test, which Zumwalt claims would have proven his sobriety. Council moves for summary judgment on Counts I and II. The City moves for summary judgment on Count V.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986) (quoting Fed. R. Civ. P. 56(c)). An issue is "material" if it is a legal element of the claim under applicable substantive law that may affect the resolution of the action. See Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986). An issue is "genuine" if the record,

---

[1] Count IV was stricken on June 5, 2006.

taken as a whole, could lead a rational trier of fact to find for the non-moving party. See id., 106 S.Ct. at 2510. The movant may meet this standard by presenting evidence demonstrating the absence of a dispute of material fact or by showing that the nonmoving party has not presented evidence in support of an element of its case on which it bears the burden of proof. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. The moving party need not supply "affidavits or other similar materials negating the opponent's claim." Id., 106 S.Ct. at 2552-53.

Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(e)). Although the nonmovant need not present evidence that would be admissible at trial, it may not rest on his pleadings. Id., 106 S.Ct. at 2553. "[T]he plain language of rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; 106 S.Ct. at 2552. See also Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1281-82 (11th Cir. 1999).

### III. DISCUSSION

**A.  Council**

When a government official is sued under a theory of direct liability, he or she may seek summary judgment based on qualified immunity. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1263-1264 (11th Cir. 2004). "Police officers are entitled to qualified immunity for actions taken during a stop or arrest so long as their conduct does not violate clearly established

statutory or constitutional rights of which a reasonable person would have known." Smith v. City of Chicago, 242 F.3d 737, 742 (7th Cir. 2000)(internal quotations omitted).  Probable cause is a factor that must be considered when determining a police officer's entitlement to qualified immunity because the Fourth Amendment prohibits an officer from arresting citizens without the requisite probable cause.  Papachristou v. City of Jacksonville, 405 U.S. 156, 169, 92 S.Ct. 839, 847 (1972).

The existence of probable cause at the time of arrest constitutes an absolute bar to a § 1983 action for false arrest, Marx v. Gumbinner, 905 F.2d 1503, 1505 (11th Cir. 1990), as well as a bar to a claim for malicious prosecution, Kingsland v. City of Miami, 382 F.3d 1220, 1235 (11th Cir. 2004).  Here, it is undisputed that Council was acting within the course and scope of his employment when he arrested Zumwalt.  "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate."  Holloman, 370 F.3d at 1264.

Based on the observations of the Bolanoses, which were relayed to Carmack and Council, Zumwalt exhibited a number of signs of impairment including slurring of speech, unsteady gait, hazy, red, and glassy eyes, and impaired judgment.  These lay witness observations are admissible as proper lay opinions.  "Police officers and lay witnesses have long been permitted to testify as to their observations of a defendant's acts, conduct, and appearance, and also to give an opinion on the defendant's state of impairment based on those observations."  Williams v. State, 710 So.2d 24, 28 (1998).  Objective observations based on observable signs and conditions are not "scientific" and are therefore admissible.  State v. Meador, 674 So.2d 826, 831 (Fla. 4th DCA), *review denied*, 686 So.2d 580 (Fla. 1996).  Based on the fellow-officer rule, also known

as the collective knowledge doctrine, Carmack's knowledge is imputed to Council, and, more specifically, probable cause is imputed from the investigating officer to the ultimate arresting officer. Johnson v. State, 921 So.2d 490, 505 (2005).

Indeed, Florida courts have found the existence of probable caused based on far fewer objective signs of impairment. In Department of Highway Safety & Motor Vehicles v. Favino, 667 So.2d 305, 309 (Fla. 1st DCA 1995), the First District Court of Appeals found probable cause where there was an accident, but no scene to investigate because the driver left the scene and went to his residence where he could have been drinking *after* the accident. Based on the officers' observations at the Defendant's home and the witnesses testimony, probable cause to arrest for impairment existed even where no tests were administered. Id. Based on the totality of the circumstances, probable cause plainly existed to justify the arrest, breathalyzer test and request for a urine sample. Council is therefore entitled to qualified immunity as a matter of law on Count I.

Zumwalt's malicious prosecution claim is also flawed. A common law tort of malicious prosecution in Florida requires that a plaintiff establish each of six elements: (1) an original judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant (Council) was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding. Kingsland, 382 F.3d at 1234-1235 (citing Durkin v. Davis, 814 So.2d 1246, 1248 (Fla. 2d DCA 2002)).

Zumwalt's malicious prosecution claim fails for two reasons: (1) probable cause existed for his arrest; and (2) he was never charged by information or indictment. Zumwalt admits that his criminal charges were "no file[d]" by the State Attorney. "A 'no information,' which is synonymous with 'no action,' is filed by a prosecutor for the purpose of letting a person who has been arrested know that an information will not be filed or an indictment will not be filed or an indictment will not be sought." Lovelace v. State, 906 So.2d 1258, 1259 (Fla. 2005)(citation omitted). Zumwalt has no claim for malicious prosecution because he was never prosecuted. Indeed, given the objective evidence of Zumwalt's impairment, Zumwalt should count himself extremely fortunate that he was not prosecuted. Council is entitled to summary judgment as to Count I, unreasonable search and seizure, and Count II, malicious prosecution.

**B.   City**

Zumwalt attempts to allege a claim against the City for failing to train or supervise its officers, maintaining that the administration of the gaze test would have proven the absence of impairment and obviated any need for his arrest, breathalyzer test and urine sample.

Section 1983 recovery against a municipal defendant is possible only when the claimant establishes that there was a policy, practice, or custom of the municipal defendant that was the moving force that caused the constitutional violation. See Monell v. Dept. of Soc. Servs., 436 U.S. 658, 690-91, 98 S.Ct. 2018, 2036 (1978). Municipalities "may not be held liable for constitutional deprivations on the theory of *respondeat superior*. Rather, they may be held liable only if such constitutional torts result from an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law." Denno v. School Bd. of Volusia County, 218 F.3d

Page 9

1267, 1276 (11th Cir. 2000)(citing <u>Monell</u>, 436 U.S. at 694, 98 S.Ct. at 2037-38).  Zumwalt must prove that his constitutional rights were violated, that the City had a policy or custom that was deliberately indifferent to those rights and that the policy or custom caused the violation. Zumwalt must identify a policy or custom and show that the policy or custom inflicted the injury. <u>See</u> <u>Gold v. City of Miami</u>, 151 F.3d 1346, 1350 (11th Cir. 1998).

  The deliberate indifference standard requires a conscious choice by policy makers among alternative courses of action.  <u>See</u> <u>Young v. City of Augusta, Georgia</u>, 59 F.3d 1160, 1171-72 (11th Cir. 1995): <u>see</u> <u>also</u> <u>Owens v. City of Fort Lauderdale</u>, 174 F.Supp. 2d 1298, 1310 (S.D.Fla. 2001).  These policy makers must have actual or constructive notice that the particular omission is substantially certain to result in the violation of the constitutional rights of citizens. <u>Young</u>, 59 F.3d at 1172.  In other words, Zumwalt must demonstrate that there was a widespread practice among city police officers, prior to this incident, to arrest persons without probable cause because they failed to administer a specific roadside sobriety test.

  Zumwalt has not demonstrated that the City was deliberately indifferent to conduct that was certain to cause a deprivation of his constitutional rights.  He has not named a final policy maker who had actual or constructive knowledge of training deficiencies and made a conscious choice to ignore such information, such that a constitutional violation was the likely result. Zumwalt has produced no evidence tending to demonstrate an obvious need for more training, supervision or discipline of its officers, nor has he established the existence of a prior history of deficiencies in training with respect to arrests without probable cause or the level of force used in arrests that led to a pattern of widespread constitutional violations. <u>Owens</u>, 174 F.Supp.3d at

1312 (citing Gold 151 F.3d at 1351). The only instance wherein the need to train is "so obvious" without a history of constitution violations is the use of deadly force by officers with firearms. Owens, 174 F.Supp.2d at 1314. This case does not involve deadly force. Since Zumwalt has failed to produce any evidence in support of this claim, summary judgment is also appropriate on Count V.

Count III is a state law claim for false arrest. Since Zumwalt disputes that he failed the roadside sobriety tests that were administered, the City does not move for summary judgment on this claim. If the Court wishes, it may exercise supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367(a). The Court's exercise of supplemental jurisdiction is discretionary, however. 28 U.S.C. § 1367(c)(3) ("The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if…the district court has dismissed all claims over which it has original jurisdiction."). The Court, having granted summary judgment on Counts I, II and V of this action, hereby declines to exercise supplemental jurisdiction over the pendent state law claim.

## IV. CONCLUSION

THE COURT, being fully advised and having considered the pertinent parts of the record, hereby

ORDERS AND ADJUDGES that Council's Motion for Summary Judgment, filed July 14, 2006 **[DE 82]**, and the City's Motion for Summary Judgment, filed July 14, 2006 **[DE 76]**,

are GRANTED.  The Court declines to exercise supplemental jurisdiction over Count III, Zumwalt's false arrest claim against the City.  Final judgment shall be entered by separate order.

DONE AND ORDERED at Chambers in West Palm Beach, Florida this 19th day of October, 2006.

S/Kenneth L. Ryskamp  
Copies provided:  
All parties and council of record  

KENNETH L. RYSKAMP  
UNITED STATES DISTRICT JUDGE